UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-7 BARRY VAUGHN,

    Defendant.
_____/

Case No. 22-cr-20059

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR BOND (Dkt. 170)**

This matter is before the Court on Defendant Barry Vaughn's motion for bond (Dkt. 170). For the reasons stated below, the Court denies the motion.[1]

**I. BACKGROUND**

Vaughn is charged with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (Count Two). Indictment (Dkt. 14). The indictment alleges that, from October 2020 to December 2021, Vaughn, along with 12 other defendants, used several residences in Detroit, Michigan to sell, store, and process controlled substances, including fentanyl, heroin, cocaine, and marijuana. Id. at 5–10. On March 22, 2022, after a detention hearing, the magistrate judge ordered Vaughn detained pending trial (Dkt. 94).

Vaughn requests that the Court grant him bond, citing the fact that all 12 of his codefendants charged in Count One of the indictment have been granted bond, with varying conditions. Mot. at

---

[1] In addition to the motion, the briefing includes the Government's response (Dkt. 176) and the proposed findings of fact and conclusions of law submitted by Vaughn and the Government after the Court's February 15, 2023 hearing on the motion.

2. He proposes that his cousin, Brandi Vaughn, serve as third-party custodian. The Government opposes Vaughn's motion.

## II. ANALYSIS

When a magistrate judge issues a detention order pursuant to 18 U.S.C. § 3142, a defendant may request that the order be reviewed by the district court. 18 U.S.C. § 3145(b). The district judge reviews the magistrate judge's detention order de novo. United States v. Romans, No. 00-5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000).

Under the Bail Reform Act, "[i]f . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). To make this determination, a court consults the factors set forth in § 3142(g): (i) the nature and circumstances of the offense charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger that the defendant's release would pose to any person or the community. "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004).[2]

---

[2] In his proposed findings, Vaughn states that the issue of dangerousness has already been raised and considered or adjudicated in regard to the codefendants in this case. Because issue preclusion applies in criminal cases, he states, courts' prior findings that the dangerousness of the offense-related conduct does not weigh in favor of detention for the other codefendants is binding on the Government, which leaves Vaughn's flight risk as the only remaining assessment for the Court to make. The other bail determinations, however, involved the issue of whether the release of Vaughn's codefendants poses a danger to any other person or the community. The issue before the Court is whether the release of Vaughn specifically poses a danger to any other person or the community.

Where—as is the case here—there is probable cause to believe that the defendant committed one of the crimes listed in § 3142(e)(3), it is presumed that no condition or combination of conditions will reasonably assure the appearance of Vaughn as required and the safety of the community.[3] See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). The presumption in favor of detention imposes a burden of production on the defendant, and the Government retains the burden of persuasion. Id. A defendant satisfies the burden of production when the defendant comes forward with evidence that he or she poses neither a danger to the community nor a risk of flight. Id. While this burden of production is "not heavy," the defendant "must introduce at least some evidence." Id. (punctuation modified). Even if rebutted, the presumption does not disappear entirely. Id. Rather, the fact that the defendant committed a crime listed in § 3142(e)(3) remains a factor to be considered among those weighed by the district court. Id. "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." Id. at 946. And in cases that involve "multiple defendants who are not necessarily similarly situated, the dangerousness inquiry must be an individualized one." Id. (explaining that, "[j]ust as at trial, in which courts and juries must resist the urge to find guilt or innocence by association, each defendant is entitled to an individualized determination of bail eligibility").

In weighing all four factors under § 3142(g), the Court finds that the Government has established by clear and convincing evidence that no condition or combination of conditions of

---

[3] One of the crimes listed in § 3142(e)(3) is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904)[.]" 18 U.S.C. § 3142(e)(3)(A). Here, a grand jury indicted Vaughn for controlled substance crimes that have maximum terms greater than 10 years. The indictment establishes probable cause to believe that Vaughn committed these crimes. See United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

release will reasonably assure the safety of other persons and the community. The Court addresses each of the § 3142(g) factors in turn.

### A. Nature and Circumstances of the Offense

The "nature and circumstances" of the offense charged include whether the offense "involves . . . a controlled substance . . . ." 18 U.S.C. § 3142(g)(1). Both counts against Vaughn are controlled substance offenses. According to the Government, Vaughn participated in a large-scale conspiracy that distributed significant quantities of fentanyl, cocaine, and heroin. The Government alleges that heroin, suspected cocaine, two firearms, and cash were recovered from a residence at which Vaughn was observed meeting with alleged coconspirators and engaging in a drug transaction. And it alleges that heroin, crack cocaine, a firearm, and ammunition were recovered from another residence at which Vaughn distributed controlled substances. This factor, therefore, weighs in favor of Vaughn's continued detention.

### B. Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Vaughn. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948. "In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence." United States v. Foster, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020).

The weight of the evidence of dangerousness proffered by the Government supports detention, as there is evidence that Vaughn participated in a conspiracy to distribute addictive substances and to which multiple firearms have been connected. The pretrial detention of "run-of-the-mill drug dealers" is "routinely affirm[ed], on dangerousness grounds, . . . even without any indication that the defendant has engaged in violence." Stone, 608 F.3d at 947 n.6.

### C. History and Characteristics

Section 3142(g)(3) directs the Court to consider the history and characteristics of the defendant, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3)(A)–(B). The Court credits the fact that Vaughn has ties to the Detroit area, as several of his family members live here, and it is his local residence. His cousin, with whom he proposes that he live, is willing to serve as a third-party custodian. Vaughn states that, while he has a history of drug use, his recent drug screens were negative.

However, two considerations outweigh these factors. The first consideration is that Vaughn has a history of controlled substances offenses dating back to 2000. This case is his third federal drug case. In 2000, Vaughn was convicted in Michigan of attempted delivery/manufacture of fewer than 50 grams of a controlled substance. He was sentenced to two years of probation. Two years later, Vaughn was convicted of distribution of cocaine base in the Southern District of West Virginia. He was sentenced to 76 months of imprisonment followed by three years of supervised release. In 2011, he was again convicted in the Southern District of West Virginia for distribution of oxycodone. He was sentenced as a career offender to 188 months in prison followed by five years of supervised release. This criminal history suggests that Vaughn is not deterred by prior punishment.

The second consideration is that Vaughn is alleged to have committed the charged offenses while on supervised release. In January 2021, Vaughn was released from prison after the district court in West Virginia granted him compassionate release. Vaughn requested that jurisdiction of his supervised release be transferred to this district, and, in March 2021, this district granted his request. See 3/18/21 Order Accepting Transfer of Jurisdiction, 21-cr-20191, United States v. Vaughn (E.D. Mich. 2021) (No. 21-cr-020191, Dkt. 2). According to the Government, Vaughn returned to selling drugs shortly after being granted compassionate release. Fourteen months after being released, an arrest warrant was issued for Vaughn's violation of supervised release, based on the alleged criminal conduct in this case. See 21-cr-20191, United States v. Vaughn (E.D. Mich. 2021). Vaughn argues that he should be granted bond because all of his codefendants charged in Count One of the indictment have been granted bond, including those whose conduct indicates greater culpability because they were the alleged leaders of the conspiracy. See Mot. at 2–3. He states that the dangerousness of the offense-related conduct did not prevent the release of his codefendants. But, as the Government notes, Vaughn is the only member of the conspiracy who is alleged to have committed the charged crimes while on federal supervised release. The Government states that law enforcement observed Vaughn engage in multiple hand-to-hand drug transactions at the address at which he was being supervised, and they found crack cocaine, heroin, a firearm, and ammunition during a search of this address. At the hearing on the motion, the Government also maintained that Vaughn was the only member of the conspiracy on supervised release following multiple prior federal drug convictions.

Vaughn's criminal history consisting of multiple drug offenses, his supervised release status at the time of the charged offenses, and his history of engaging in drug distribution weigh against release.

### D.  Danger to the Community

The fourth and final factor requires that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  The Court must "look to more than whether . . . the defendant . . . has been guilty of physical violence"; it must also look to the safety of the community as a whole.  United States v. Vance, 851 F.2d 166, 169 (6th Cir. 1988).

"[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."  Stone, 608 F.3d at 947, n.6.  There is evidence of Vaughn's involvement in a conspiracy to distribute drugs that have a high potential for abuse, including cocaine, heroin, and fentanyl.  The circulation of such drugs presents a serious danger to the health and well-being of the community.  See United States v. Hodges, 641 F. App'x 529, 532 (6th Cir. 2016); United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989) (stating that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community"); United States v. Leon, 766 F. 2d 77, 81 (2d Cir. 1985) ("[T]he harm to society caused by narcotics trafficking is encompassed within Congress'[s] definition of 'danger.'"); see also United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989) (explaining that "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence" and that "'[s]afety of the community' refers to the danger that the defendant might engage in criminal activity to the detriment of the community") (punctuation modified).

This factor, therefore, weighs against releasing Vaughn on bond.

### E.  Vaughn's Proposed Alternative to Custody

Vaughn states that, if released, he will live with his cousin and suggests that the Court can impose conditions such as monitoring and a tether.  Given that he is alleged to have committed the charged offenses while living with another relative, his mother, at the address at which he was

7

being supervised, the Court is unconvinced that these measures will reasonably assure the safety of the community.

Vaughn also argues that granting bond with conditions is the most efficient and likely way to ensure that he has effective assistance of counsel. Mot. at 3. He states that, given the volume of discovery, he needs to be able to meet in his counsel's office to "effectively review" discovery. Id. Courts have found the alleged complexities of the case and the volume of discovery materials insufficient to support release. See United States v. Hanson, No. 3:22-CR-00076, 2022 WL 1813585, at *8 (N.D. Ohio May 3, 2022), report and recommendation adopted, No. 3:22 CR 76, 2022 WL 1803337 (N.D. Ohio June 2, 2022); United States v. Stanford, 722 F. Supp. 2d 803, 812–813 (S.D. Tx. 2010) (rejecting defendant's argument that he must be released from pretrial detention because of the complexity of the case and the enormous volume of documents involved, in part because those alleged difficulties did not relate to whether the defendant was a risk of flight or a danger to the community); United States v. Petters, No. 08–364, 2009 WL 205188, at *2, (D. Minn. Jan. 28, 2009) ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release . . . . Indeed, accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial."); see also United States v. Birbragher, No. 07–CR–1023, 2008 WL 2246913, at *1 (N.D. Iowa May 29, 2008) (denying defendant's request for temporary release despite defendant's contention that he could not adequately prepare for trial in an "extremely complicated and document-intensive case" when defendant did not show that temporary release was necessary to the preparation of his defense).

Given the above, the Court finds that the Government has met its burden and shown by clear and convincing evidence that no condition or combination of conditions can address the risk of danger that Vaughn presents to other people or the community. It denies Vaughn's motion for bond.

### III. CONCLUSION

For the reasons stated above, the Court denies Vaughn's motion for bond (Dkt. 170).

SO ORDERED.

Dated: March 17, 2023  s/Mark A. Goldsmith
Detroit, Michigan   MARK A. GOLDSMITH
   United States District Judge