UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                    Case No. 22-20059

v.                                                  HON. MARK A. GOLDSMITH

BARRY VAUGHN,

       Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR FRANKS
HEARING (Dkt. 192)**

Before the Court is Defendant Barry Vaughn's motion to suppress evidence gathered pursuant to a warrant authorizing the search of the residence at 13108 Maine Street in Detroit, Michigan and request for a hearing under Franks v. Delaware, 438 U.S. 154 (1978) (Dkt. 192). For the reasons set forth below, the Court denies both the motion and the request for a Franks hearing.[1]

**I. BACKGROUND**

Vaughn is charged with (i) conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 and (ii) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Indictment (Dkt. 14).

---

[1] In addition to the motion, the briefing includes the Government's response (Dkt. 201) and Vaughn's reply (Dkt. 212). The Court held a hearing on the motion on July 5, 2023.

On December 9, 2021, Magistrate Judge Elizabeth Stafford of this district signed a warrant authorizing a search of the residence at 13108 Maine Street in Detroit, Michigan for evidence or contraband related to the alleged drug conspiracy. See Warrant (Dkt. 205). Senior Special Agent Sherri Reynolds of the Bureau of Alcohol, Tobacco, Firearms and Explosives unit within the United States Department of Justice (ATF) provided an affidavit in support of the warrant setting forth facts in support of the Government's theory that Vaughn participated in a conspiracy to distribute drugs. Aff.[2]

According to the affidavit, in July 2021, ATF agents turned their attention to Vaughn during an investigation of a Detroit-based drug trafficking organization (DTO), after identifying his telephone number as one used to communicate with other suspected members of the DTO. Id. ¶ 21. On July 14, agent surveillance identified Vaughn leaving a residence on Cruse Street in Detroit while holding a clear plastic bag containing a "substance . . . consistent with narcotics such as cocaine, heroin, and/or crack-cocaine." Id. ¶ 22. Several months later, on October 7, Agents intercepted telephone conversations in which Vaughn discussed drugs and drug trafficking. Id. ¶¶ 30–31.

The affidavit asserts that agents identified 13108 Maine as Vaughn's residence through a review of records related to Vaughn's supervised release. Id. ¶ 36. However, according to Vaughn, 13108 Maine was not his correct address. Br. in Supp. of Mot. at 16. The Government concedes that 13108 Maine was not Vaughn's address, and that the affidavit was inaccurate in this respect. Resp. at 15 (citing Gov't Correction to Opp. to Def. Mot. for Bond (Dkt. 183)).

Agents began surveilling 13108 Maine in August of 2021. Aff. ¶ 36. During this surveillance, agents observed Vaughn and others engage in activity that, in the Government's

---

[2] The supporting affidavit is appended to the warrant.

view, is consistent with drug trafficking. See Resp. at 6–7. On October 28, agents observed Vaughn—while he was in his vehicle parked in front of 13108 Maine—give an unidentified individual a clear plastic bag containing a white substance. Aff. ¶ 37. The affidavit also recounts several instances in which unidentified individuals and vehicles approached the residence in November of 2021. Id. ¶¶ 39–42. These include two instances on November 12, during which (i) agents observed Vaughn speak with an unidentified individual in a vehicle in front of 13108 Maine, during which conversation Vaughn entered 13108 Maine, exited the residence, and reapproached the vehicle; and (ii) agents observed an unknown individual enter 13108 Maine to briefly meet with someone inside the residence, after which meeting the unidentified individual returned to his vehicle and drove away. Id. ¶¶ 38–39. Ten days later, on November 22, three individuals approached either the front porch or front window to retrieve an unidentified item. Id. ¶¶ 40–42. Reynolds asserts that, based on her training and experience, these November 22 interactions were consistent with "hand-to-hand" narcotics transactions. Id.

Pursuant to the warrant, agents searched 13108 Maine on December 14, 2021. Resp. at 7. During the search, agents seized, among other items, drugs, drug paraphernalia, scales, a firearm and ammunition, and a handwritten "recipe" to manufacture controlled substances. Id.

## II. ANALYSIS

Vaughn moves to suppress the evidence seized during the execution of the warrant authorizing the search of 13108 Maine. See Br. in Supp. of Mot. He asserts (i) that the affidavit supporting the warrant fails to establish probable cause for the search because it lacks a sufficient nexus between alleged drug trafficking activity and the 13108 Maine residence and (ii) that the good-faith exception to the exclusionary rule does not apply. Id. at 7, 21–24. Vaughn further requests a hearing under Franks for the opportunity to show that Reynolds "knowingly and

3

deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for [the] warrant." Id. at 15–16 (quoting United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006)).

The Court first addresses Vaughn's motion to suppress and proceeds to discuss his request for a Franks hearing.

### A. Motion to Suppress

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Christian, 925 F.3d 305, 311 (6th Cir. 2019) (punctuation modified). When presented with an application for a search warrant supported by an affidavit, a judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Smith, No. 22-cr-20351, 2023 WL 336136, at *6 (E.D. Mich. Jan. 20, 2023) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

A reviewing court "must give great deference to a magistrate's determination of probable cause," and only overturn such a determination where the magistrate "arbitrarily exercised his or her authority." United States v. Brown, 732 F.3d 569, 573 (6th Cir. 2013). However, "even if a magistrate judge acts arbitrarily in issuing a warrant, evidence seized pursuant to that warrant should not be suppressed if 'the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he [or she] issues [is] objectively reasonable.'" Smith, 2023 WL 336136, at *6 (quoting United States v. Leon, 468 U.S. 897, 922 (1984)).

4

Vaughn argues that (i) the affidavit in support of the search warrant failed to establish a sufficient nexus between 13108 Maine and the alleged drug trafficking or evidence to be seized, see Br. in Supp. of Mot. at 7–15, and (ii) that the good-faith exception under Leon does not apply to avoid the exclusionary rule, see id. at 21–24. Both arguments are without merit.

**1. Nexus between 13108 Main and Suspected Drug Trafficking**

Vaughn submits that the warrant lacks a sufficient nexus between 13108 Maine and evidence of drug trafficking because the affidavit fails to establish that evidence of drug trafficking would be found at 13108 Maine. Id. at 10–11. The Court disagrees. Agents observed Vaughn exit a residence on Cruse Street with a clear bag containing and a substance that looked like drugs, Aff. ¶ 22, and intercepted phone conversations in which Vaughn discussed drugs and drug trafficking, id. ¶¶ 30–31. Later, agents observed additional evidence of drug trafficking taking place at 13108 Maine—all of which occurred during a one-month time-period—including (i) Vaughn exiting 13108 Maine and returning to a parked car in front of the residence to give an unidentified individual a bag containing a "white substance", id. ¶ 37; and (ii) three unidentified individuals entering 13108 Maine throughout one day, each appearing to grab an item before leaving, id. ¶¶ 39–42. Such allegations, viewed together, are sufficient to establish a nexus between drug trafficking and 13108 Maine. See Christian, 925 F.3d at 311 (cautioning courts against engaging in "line-by-line scrutiny" of affidavits and explaining that affidavits should be viewed in their "totality") (punctuation modified).

Vaughn also challenges the sufficiency of the affidavit on the ground that it failed to establish probable cause that he lived at 13108 Maine. Br. in Supp. of Mot. at 11. But whether 13108 Maine was Vaughn's residence is beside the point. As set forth in the affidavit, agents believed (albeit incorrectly) that Vaughn lived at 13108 Maine and began surveilling the residence.

Aff. ¶ 36. Once there, agents observed activities in and around 13108 Maine that supplied probable cause to believe that evidence of drug trafficking would exist inside the residence. Id. ¶¶ 37–42.

For similar reasons, Vaughn's cited case law does not support his position. See Br. in Supp. of Mot. at 8–12 (citing United States v. Brown, 828 F.3d 375 (6th Cir. 2016) and United States v. Sanders, 59 F.4th 232 (6th Cir. 2023)). Both Brown and Sanders involved search warrants that were later invalidated by the United States Court of Appeals for the Sixth Circuit as lacking probable cause because the affidavits supporting the warrants failed to establish that the residence had been used in drug trafficking. See Brown, 828 F.3d at 384 (reversing district court's denial of motion to suppress and explaining that "if [an] affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, . . . it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer"); Sanders, 59 F.4th at 241–242 (invalidating warrant where the supporting affidavit failed to show that the place to be searched was the suspected drug dealer's residence or that the residence was used in drug trafficking activity).[3] As explained above, the affidavit at issue here supplies several allegations that connect 13108 Maine with alleged drug trafficking. Brown and Sanders do not support Vaughn's cause.

Because the affidavit set forth allegations sufficient to support a nexus between suspected drug trafficking and 13108 Maine such that probable cause existed, the Court cannot conclude that

---

[3] Further, the Sanders opinion upon which Vaughn relies has no precedential value because it was later vacated for rehearing en banc. See United States v. Sanders, 68 F.4th 1030 (6th Cir. 2023).

the magistrate judge acted "arbitrarily" in authorizing the search warrant. The Court must deny Vaughn's motion on this basis alone.[4]

### 2. Good-Faith Exception

Even if the Court concluded that the affidavit failed to establish probable cause, the good-faith exception to the exclusionary rule would apply under Leon.

"Under Leon, the exclusionary rule does not bar from admission evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Christian, 925 F.3d at 312 (punctuation modified). However, the good-faith exception is not applicable "when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (punctuation modified). "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." Id. Importantly, the "bare bones" label is "reserve[d] for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Gilbert, 952 F.3d 759, 763 (6th Cir. 2020) (punctuation modified).

According to Vaughn, the affidavit is "bare bones" because "there are no facts presented to link the home to any reasonable belief that evidence of drug trafficking would be found inside."

---

[4] Vaughn also posits that the affidavit lacks "corroborating investigative measures conducted at the residence, such as trash pulls or controlled buys." Br. in Supp. of Mot. at 13. But such corroborative steps are not required where the agents are not relying on information provided by a confidential informant. See United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005) (punctuation modified) ("When confronted with hearsay information from a confidential informant, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information.").

7

Br. in Supp. of Mot. at 24.  Again, the Court disagrees.  The affidavit includes allegations that agents (i) observed Vaughn engaging in suspected drug dealing at another location, (ii) observed Vaughn exiting 13108 Maine and handing a clear plastic bag with suspected drugs to an unidentified individual from his vehicle parked outside of 13108 Maine, and (iii) observed several unidentified individuals make short visits to 13108 Maine's front porch or windows to retrieve unidentified items.  See Aff. ¶¶ 37–42.  Such allegations are beyond "suspicions . . . , without . . . [a] basis of knowledge," and their inclusion in the affidavit precludes it from being characterized as "bare bones."  Gilbert, 952 F.3d at 763.

Because the affidavit was not "bare bones," a reasonable law enforcement agent could rely upon it.  The search is saved by the good-faith exception to the exclusionary rule, even if the affidavit lacked probable cause.

The Court denies Vaughn's motion to suppress.

### B. Request for Franks Hearing

Vaughn also requests a hearing under Franks to challenge the issuance of the warrant, asserting that Reynolds misrepresented that Vaughn had informed probation that 13108 Maine was his residence.  Br. in Supp. of Mot. at 15–16 (citing Aff. ¶ 36).

Vaughn is entitled to a Franks hearing if he "1) make[s] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[s] that the false statement or material omission is necessary to the probable cause finding in the affidavit."  Smith, 2023 WL 336136, at *3 (punctuation modified).  The Court finds that Vaughn falls short on both requirements.

As for the first requirement, a law enforcement officer's statement is only considered to be issued with "reckless disregard for the truth" if a defendant shows that the affiant subjectively "entertained serious doubts as to the truth of his or her allegations." United States v. Bateman, 945 F.3d 997, 1008 (6th Cir. 2019) (punctuation modified).

Vaughn argues that Reynolds made the false statement "knowingly, and deliberately, or with a reckless disregard for the truth." Br. in Supp. of Mot. at 16. The Government does not dispute that the affidavit falsely stated that Vaughn listed 13108 Maine as his residence; rather, it argues that Reynolds did not knowingly or recklessly include the false statement in the affidavit because she relied on information from a representative of the probation department. Resp. at 15 (citing Government's Correction to Opposition to Vaughn's Motion for Bond).

The Court concludes that Vaughn has not established that Reynolds knowingly or recklessly made the false statement. Smith, 2023 WL 336136, at *4. As the Government points out, Resp. at 16, Vaughn has not provided any evidence showing that Reynolds knowingly or recklessly included false statements in the affidavit. Resisting this conclusion, Vaughn posits that Reynolds could have avoided mistakenly relying on the probation office representative for Vaughn's address by contacting Vaughn's probation officer or reviewing Vaughn's vehicle registration documents. Br. in Supp. of Mot. at 17–18. At most, Vaughn has established that Reynolds was negligent because she failed to verify Vaughn's address. But "[a]llegations of an agent's negligence or innocent mistake are insufficient" to necessitate a Franks hearing. Bateman, 945 F.3d at 1008 (punctuation modified). And Vaughn makes no showing that Reynolds included the false statement in the affidavit while "entertain[ing] serious doubts as to the truth of . . . her allegations." Id. (punctuation modified); see also Br. in Supp. of Mot.; Reply.

9

Vaughn also fails to satisfy the second Franks requirement, which requires him to show that the false statement contained in the affidavit was necessary to support the probable cause finding. See Smith, 2023 WL 336136, at *3. As explained above, even if 13108 Maine is not Vaughn's address, the affidavit sets forth observations made by law enforcement sufficient to support a nexus between 13108 Maine and evidence of drug trafficking such that probable cause for the warrant existed. See Bateman, 945 F.3d at 1008. Vaughn cannot prevail on the second Franks requirement.

The Court denies Vaughn's request for a Franks hearing.

### III. CONCLUSION

For the reasons stated above, the Court denies the motion to suppress and request for a Franks hearing (Dkt. 192).

SO ORDERED.

Dated: August 4, 2023

                                        s/Mark A. Goldsmith
                                        MARK A. GOLDSMITH
                                        UNITED STATES DISTRICT JUDGE